UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SACCO individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOUSEFLOW, INC.,<br><br>Defendant. | No. 2:20-cv-02330-TLN-KJN<br><br>**ORDER** |

This matter is before the Court on Defendant Mouseflow, Inc.'s ("Mouseflow, Inc." or "Defendant") two Motions to Dismiss. (ECF Nos. 31, 32.) Plaintiff Brian Sacco ("Plaintiff") filed an opposition. (ECF No. 33.) Defendant filed replies. (ECF Nos. 36, 37.) For the reasons set forth below, the Court GRANTS Defendant's first motion (ECF No. 31) and DENIES the second motion as moot (ECF No. 32).

///
///
///
///
///
///

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant[1] is a Texas corporation with its headquarters in Austin, Texas. (ECF No. 27 at ¶ 5.) Defendant's business model includes entering into voluntary partnerships with various companies where Defendant licenses the use of its software technology, Mouseflow. (*Id.* at ¶¶ 13, 15.) Mouseflow is a tool used to record, in real time, a website visitor's interactions on the website, including a user's keystrokes, mouse clicks, mouse movement, scrolls, and other interactions with the website. (*Id.* at ¶¶ 10, 11.) The Mouseflow software also tracks device information, location information, and more. (*Id.*) Plaintiff alleges the Mouseflow software functions in the following way: a company installs the Mouseflow JavaScript on its website, which then records visitor's information as outlined above, and transfers the recorded information to Defendant's servers that host the platform. (*Id.* at ¶¶ 12–17.)

Plaintiff, a California resident, contends Blizzard Entertainment, Inc. ("Blizzard") voluntarily embedded the Mouseflow JavaScript code on worldofwarcraft.com pursuant to an agreement with Defendant. (*Id.* at ¶¶ 3, 13.) While in California on or around March and April of 2020, Plaintiff visited the website worldofwarcraft.com two to three times. (*Id.*) During his visits to the website, Plaintiff engaged in typical browsing activities, "such as clicking on links to webpages of interest, scrolling through pages, using dropdown menus, and using the website search tool." (*Id.*) Plaintiff was unaware that his "keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real-time and disclosed to Mouseflow, while the website communications between Plaintiff and worldofwarcraft.com were being transmitted." (*Id.* at ¶ 4.) Plaintiff alleges the Mouseflow software "functions as a wiretap" and Defendant is a "eavesdropper" who surreptitiously obtains user information. (*Id.* at ¶ 14.)

///

---

[1] "Mouseflow" is both the name of the technology at issue as well as the name of the Defendant company. (*See* ECF No. 31-1 at 7.) The Court has attempted to distinguish between the facts related to the software and the facts related to the company where necessary, and refers to the company as "Mouseflow, Inc." or "Defendant" and the software as "Mouseflow" or "Mouseflow software."

2

On November 20, 2020, Plaintiff filed a purported class action against Blizzard and Mouseflow. (ECF No. 1 at 2.) The complaint alleged violations of the California Invasion of Privacy Act ("CIPA"), codified at California Penal Code §§ 631 and 635. (*Id.* at ¶¶ 27–44.)

On February 16, 2021, Plaintiff voluntarily dismissed Blizzard from this action. (ECF No. 24.) On February 17, 2021, Plaintiff filed the operative First Amended Complaint ("FAC") with substantially the same allegations contained in the original complaint. (ECF No. 27.) The FAC alleged the same violations of California Penal Code §§ 631 and 635 and added a claim of invasion of privacy under the California Constitution. (*Id.* at ¶¶ 31–56.) On March 17, 2021, Mouseflow filed two motions to dismiss—one asserting a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) (ECF No. 31) and the second asserting a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6) (ECF No. 32). Because the Court concludes the FAC should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction, the Court need not and does not address Defendant's remaining grounds for dismissal.

**II.     STANDARD OF LAW**

Rule 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction. When there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with federal due process requirements. Cal. Civ. Proc. Code § 410.10. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004)).

The traditional bases for exercising personal jurisdiction are: (1) service of process in the forum state; (2) domicile within the forum state at the time the action is commenced; or (3) consent to jurisdiction in the forum state. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). However, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial

justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Under the minimum contacts test, there are two categories of personal jurisdiction: general and specific jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).  In the instant case, Plaintiff does not address general jurisdiction in his opposition and asserts only that the Court has specific jurisdiction.  (*See* ECF No. 33.)

Specific jurisdiction is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities.  *Daimler*, 571 U.S. at 127.  There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

**III.   ANALYSIS**

    A.   <u>Factual Irregularities and Contradictions</u>

As a preliminary matter, the FAC contains multiple inconsistent allegations that are relevant to the Court's determination.  Though a Court must generally accept allegations in a complaint as true at the motion to dismiss stage, the Court need not accept inconsistent allegations in a complaint as true.  *Jones v. Pollard*, No. 21-CV-162-MMA (RBM), 2022 WL 706926, at *5 (S.D. Cal. Mar. 9, 2022) (citing, *Walsh v. Sacramento*, No. 2:13-cv-2077 MCE KJN PS, 2014 WL 4472752, at *10 (E.D. Cal. Sep. 11, 2014)).  *See also In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 (S.D.N.Y. 2021) ("'[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'" (quoting *Lenart v. Coach*

*Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015))).

Much of the difficulty in reviewing this case stems from Plaintiff's failure to distinguish between Mouseflow, Inc. (the company) and Mouseflow (the software). Despite defining Mouseflow, Inc. as "Mouseflow" in paragraph 1 of the FAC, Plaintiff quickly devolves into using "Mouseflow" when referencing both the company and the software. (*See, e.g.*, ECF No. 33 at ¶ 10 "Mouseflow [software] is a tool that surreptitiously records…"; at ¶ 12 "Mouseflow [software] secretly records visitors to worldofwarcraft.com…"; at ¶ 14 "Mouseflow [software] functions as a wiretap…".) This hinders the Court's ability to determine whether any given allegation relates to Defendant or the software.

After attempting to distinguish between the allegations that relate to Defendant from the allegations that relate to the software, it becomes clear the FAC is riddled with contradictory and inconsistent allegations. In paragraph 9 of the FAC the Plaintiff alleges "Defendant intentionally installed the wiretap at issue here on worldofwarcraft.com." (*Id*. at ¶ 2.) But then in paragraph 13, Plaintiff alleges "[p]ursuant to an agreement with Mouseflow, Blizzard voluntarily embedded the Mouseflow JavaScript code on worldofwarcraft.com…." (*Id*. at ¶ 13.) These allegations are inherently inconsistent — one alleges Defendant installed the software, the other that Blizzard installed the software — both cannot be true.

These inconsistencies only grow as the FAC continues. Plaintiff defines Mouseflow in paragraph 10 as a "tool that surreptitiously records, in real time, a website visitor's interactions on the website." (*Id*. at ¶ 10.) Plaintiff goes on to allege the Mouseflow "tool" allows users to "filter to find [website] user sessions that reveal frustration, glitches and errors, or lost customers." (*Id*.) Users of the Mouseflow software "tool" can also "rewind, fast forward, adjust the speed, add comments or notes, and download or share it." (*Id*.) Users of the software can "even set up alerts and collaborate with team members." (*Id*.) Paragraphs 13 and 17 alleges that Blizzard embedded this software on its website worldofwarcraft.com. (*Id*. at ¶¶ 13, 17.) Once installed on the website, the Mouseflow software "would have captured Plaintiff's keystrokes and mouse click on the website and operated in a manner consistent with the descriptions above." (*Id*. at ¶ 19.) These allegations establish that Defendant licenses the Mouseflow software to other companies

5

for use. These allegations further establish that the Mouseflow software allows its *users*, the licensed companies, to track website visitors' movements and collect website visitors' information. Based on these allegations, Defendant has no role in the actual use of the "tool" at issue here, the Mouseflow software. As alleged, Defendant provided the software as a service to Blizzard, and Blizzard chose to use the software. In choosing to use the software, Blizzard was in the driver's seat—able to employ the software on its website to record visitors' movements and obtain visitors' information. (*Id*. at 3.)

These allegations, however, conflict with other allegations in the FAC like those in paragraph 36, which states, "by using Mouseflow's technology, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff…and worldofwarcraft.com…." (*Id*. at ¶ 36.) This allegation is inherently inconsistent with the allegations discussed above. Defendant does not *use* Mouseflow. Rather, it provides it to other companies, like Blizzard, for their use. Accordingly, Defendant necessarily did not "tap" anything, they simply provided the software to Blizzard for Blizzard's use. Then, in paragraph 37, Plaintiff claims "by using Mouseflow technology, Defendant willfully and without the consent of all parties to communications, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications…." (*Id*. at ¶ 37.) Again, based on the allegations discussed above, Defendant does not *use* the Mouseflow technology, Defendant provides it to other companies, like Blizzard. Indeed, paragraph 15 of the complaint concedes Defendant's "business model involves entering into voluntary partnerships with various companies and *providing* its software to those partners." (*Id*. at ¶ 15) (emphasis added.). Because Defendant only *provided* the software, rather than *used* the software, it cannot be said that Defendant "read or attempted to read or learn the contents" of any communications. (*Id*. at ¶ 37.) Because these allegations are inherently contradictory, the Court need not accept them as true. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 424.

B.     Personal Jurisdiction

Turning to the issue of personal jurisdiction, Defendant argues the Court should dismiss the FAC because there is neither general nor specific jurisdiction as it is not "at home" in

California and it lacks sufficient minimum contacts within the state. *Id*. In opposition, Plaintiff does not argue this Court has general jurisdiction over Defendant and instead asserts Defendant is subject to specific jurisdiction based on Defendant's forum-related activities. (ECF No. 33 at 3.) Thus, this Court looks to the Ninth Circuit's three-part test to determine whether to exercise specific personal jurisdiction over Defendant.

The first prong of the three-part specific personal jurisdiction test addresses the directionality and intent of a defendant's conduct by examining whether a defendant has "purposefully availed" itself of or "purposefully directed" its conduct at or to the forum. Where, as here, a case sounds in tort, the Court employs the purposeful direction test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). To determine whether a Defendant purposefully directed its conduct at the forum state, the Court employs another three-part test, the "effects" test, which derives from *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* For a defendant to have purposefully directed their conduct at or to a forum the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Mavrix Photo*, 647 F.3d at 1228).

Plaintiff argues the intentional act prong is "easily satisfied" because Plaintiff alleges Defendant intentionally wiretapped California visitors of worldofwarcraft.com. (ECF No. 33 at 12.) Plaintiff cites *S.D. v. Hytto Ltd.*, No. 18-CV-00688-JSW, 2019 WL 8333519 (N.D. Cal. May 15, 2019), in support of their position. In *Hytto* the complaint alleged that the defendant, Hytto's, application or "app" "continuously and contemporaneously intercepts and transmits to Hytto's servers" individual users' information. *Id.* at *1. In *Hytto* the court found the intentional act standard was easily satisfied because the plaintiff "alleges that Hytto purposefully intercepted electronic transmission from and/or to users of the [forum]." *Id.* at *4. Here, the allegations are less clear. Though Plaintiff argues Defendant purposely intercepted Plaintiff's electronic transmissions, a review of the FAC shows otherwise.

As discussed at length above, the FAC is riddled with factual irregularities. These irregularities prevent any finding that Defendant engaged in the actual interception or

transmissions of communications, data, or information from Plaintiff or any California resident. This is because the allegations that Defendant intercepted communications, wiretapped any line, or otherwise improperly collected data are inconsistent and contradicted by allegations in the FAC about the functioning of the Mouseflow software and Defendant's business model. These irregularities and inconsistencies prevent the Court from identifying an intentional act that could satisfy the first prong of the effects test. The intentional act advanced by Plaintiff, that Defendant wiretapped visitors of the worldofwarcraft.com, is contradicted by the allegations that Defendant only provided the Mouseflow software to Blizzard and that Blizzard voluntarily embedded the software in its JavaScript—making Blizzard the only entity *using* the alleged wiretapping technology. *Id.*

While the FAC does allege Defendant contracted with Blizzard to use the Mouseflow software, Plaintiff does not argue this contract amounts to an intentional act for purposes of establishing personal jurisdiction. Even if they did, this act alone is far too attenuated to support personal jurisdiction. *See Gov't of the Lao People's Democratic Republic v. Baldwin*, No. 2:20-CV-00195-CRK, 2022 WL 2047825, at *8 (D. Idaho June 7, 2022) ("Although a contract with a forum resident is an intentional act, it is insufficient by itself to establish jurisdiction."). Because the FAC fails to allege an intentional act by Defendant there can be no personal jurisdiction.

Even if the Court were to accept the intentional act put forth by Plaintiff that Defendant intentionally wiretapped California visitors of worldofwarcraft.com, Plaintiff still fails to establish the second element of the effects test—that the act was directly aimed at California. The "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). To determine whether a defendant expressly aimed their conduct at the forum state, the court in *Picot* looked to the specific injury alleged to determine whether it was "tethered" in any way to the forum state. *Id.* The court determined the plaintiff's injury was not tethered to California in any way, "rather, his injury . . . would follow him whenever he might choose to live or travel." *Id.* at 1215. In other words, the harm would have befallen the plaintiff no matter his location. The same can be said here. The alleged harm — the recording of Plaintiff's visit to the

8

worldofwarcraft.com website and the collection of his personal data — would have occurred no matter the state Plaintiff was in. Defendant did nothing specifically directed at California or California residents to tether it to this forum.

Plaintiff again cites *Hytto* to support his claim that Defendant expressly aimed its conduct at California. But the *Hytto* court determined the defendant was aware of its significant customer base in the forum, had several partnerships with distributors in the forum, and knowingly placed its products in brick-and-mortar stores located in the forum. *Id.* The FAC here is devoid of any similar allegations. There are no allegations here that Defendant was aware of significant use of Mouseflow software in California, that it engaged in any business dealings with California companies other than Blizzard, that it sought out a market in California, or that it directed its Mouseflow software at companies running websites popular in California. The ties that tethered Hytto to the forum are absent in the instant case.[2]

The Court recognizes that Plaintiff's allegations that their movements on worldofwarcraft.com were recorded and their data collected are consistent throughout the FAC. The issue, however, is that these acts are not, and perhaps cannot, be connected to Defendant, who only supplied the software to the website owner. In other words, the collection of Plaintiff's data from worldofwarcraft.com may be a *consequence* of Defendant's contract with Blizzard, but it is not an intentional act by Defendant directed at California. *See Life Bliss Found. v. Sun TV Network Ltd.*, No. EDCV1300393VAPSPX, 2014 WL 12589657, at *11 (C.D. Cal. Sept. 17, 2014) ("[t]he fact that Dish TV transmitted the Video to Dish TV subscribers in California, and perhaps in other states, is only a consequence of Sun TV's contract with Dish TV, not an intentional act by Sun TV to direct the Video purposefully to California.") (internal quotations omitted).

---

[2] The Court would also find that even if Plaintiff had alleged an intentional act, which they did not, and the intentional act was expressly aimed at California, which it was not, Plaintiff has also failed to establish any expressly aimed act caused harm that the defendant knows is likely to be suffered in the forum state. This is because the FAC is devoid of allegations that demonstrate any act by Plaintiff was more likely to cause harm in California than any other forum—as noted above the alleged harm would have occurred regardless of the location Plaintiff visited the worldofwarcraft.com website.

Because Plaintiff fails to establish the three prongs of the effects test, it necessarily follows that Plaintiff has failed to establish Defendant purposefully directed its conduct at or to the forum state. As such, Plaintiff fails step one of the specific personal jurisdiction test, and the Court need not proceed to steps two and three. The Court therefore GRANTS Defendant's first motion to dismiss. Although this Court has serious doubts about Plaintiff's ability to cure the deficiencies in the FAC, the Court will give Plaintiff an opportunity to amend based on the liberal standard in favor of granting leave to amend. The Court cautions, however, that any amendment Plaintiff files must cure the above outlined deficiencies "without contradicting any of the allegations of [the] [FAC]." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). In other words, any subsequently amended complaint must not allege facts inconsistent with the challenged pleading here. *Id*. at 296–97.

### IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's first Motion to Dismiss (ECF No. 31) and DENIES the second Motion to Dismiss as moot (ECF No. 32). Plaintiff may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order. Defendant shall file a responsive pleading not later than twenty-one (21) days from the electronic filing date of Plaintiff's amended complaint. If Plaintiff opts not to file an amended complaint, the Court will dismiss this action and close the case.

IT IS SO ORDERED.

DATED: September 30, 2022

Troy L. Nunley
United States District Judge